```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
BARBARA ANN WISCHOFF,

                    Plaintiff,              08-CV-6367

          v.                                 **DECISION
                                             and ORDER**
MICHAEL J. ASTRUE, Commissioner
of Social Security

                    Defendant
_____
```

## INTRODUCTION

Plaintiff Barbara Ann Wischoff ("Wischoff") brings this action pursuant to 42 U.S.C. §405(g) of the Social Security Act ("the Act")seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Specifically, Wischoff challenges Administrative Law Judge John P. Costello's ("ALJ")determination that she is not disabled under the sequential evaluation process(20 C.F.R. 404.1520(a) and 416.920(a)) set forth by the Social Security Administration under the Social Security Act. Plaintiff alleges that the ALJ's decision was unsupported by substantial evidence and based on errors of law.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), on grounds that the Commissioner's decision was supported by substantial evidence and based upon the application of the correct legal standards. Wischoff opposes the Commissioner's motion and cross-moves for judgment on the pleadings, on grounds that Commissioner's decision was erroneous

and not supported by substantial evidence in the record. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence on the record, and is in accord with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is hereby granted.

**BACKGROUND**

Wischoff filed an application for disability insurance benefits under Titles II and XVIII, Part A, of the Social Security Act on November 17, 2006, for a period of disability beginning on July 7, 2004. (T. 101). Plaintiff later amended her onset date to February 1, 2006, the date of her first surgery for carpal tunnel release. (T. 29). Wischoff's claim was based on her alleged inability to use both hands, her right shoulder and elbow, as well as anxiety and depression all of which had become progressively worse from July 2004 through August 28, 2006 when she stopped working. (T. 131). The Social Security Administration denied Wischoff's application on March 9, 2007, and she requested a hearing before an administrative law judge on May 5, 2007. (T. 67, 73).

Wischoff, represented by Counsel, appeared before Administrative Law Judge ("ALJ") John P. Costello in Rochester, New York. (T. 24 - 65). In a decision dated January 10, 2008, the ALJ concluded that Wischoff was not disabled within the meaning of the

Act. (T. 9). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council on January 25, 2008 alleging that the ALJ's decision was against both the "weight of substantial evidence" and Wischoff's "strong and credible testimony." (T. 4). The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Wischoff's request for review on June 19, 2008. (Tr. 5-7). On August 15, 2008, Wischoff filed this action.

## DISCUSSION

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is

also authorized to review the legal standards employed by the Commissioner in evaluating Glover's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Wischoff can prove no set of facts in support of her claim which would entitle her to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II.  Proof of Disability**

To establish disability under the Act, a claimant must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §423(d)(1)(A). The statute additionally requires that the claimant's impairment be

> of such severity that he is not only unable to do his
> previous work but cannot, considering his age, education,
> and gainful work which exists in the national economy,
> regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work.

§423(d)(2)(A)

In making a determination as to a plaintiff's disability, the Commissioner is required to apply the five-step process set forth in 20 C.F.R. §416.920. The Second Circuit has described the five-step process as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

See Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996) (citations omitted). The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the last step, and thus must demonstrate the existence of jobs in the economy that the claimant can perform. See, e.g., Kamerling v. Massanari, 295 F.3d

206, 210 (2d. Cir. 2002). When employing the five-step analysis, the Commissioner must consider four factors: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." See Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

Applying the required five-step framework to Wischoff's claim, the ALJ found that (1) plaintiff has not engaged in substantial gainful activity since July 7, 2004 (although Wischoff amended her claim asserting an onset date to February 1, 2006 at her hearing on November 19, 2007) (T. 29); (2) plaintiff has the following severe impairments: right hand, right elbow, right shoulder; depression/anxiety; right hip arthritis;(3) plaintiff's impairments or combination of impairments did not meet or exceed one of the listed impairments; and (4) plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work with a lift/carry limit of ten pounds, occasional reaching, handling, fingering, and feeling, and frequent but not constant interaction with co-workers and the general public. (T. 12 - 13). At step five, the ALJ determined that Wischoff would be unable to perform any of her past relevant work, but that her age, education, work experience and residual functional capacity made it possible

for her to perform jobs existing in significant numbers in the national economy. (T. 17).

Plaintiff argues that the ALJ's findings were not supported by the record. First, she asserts that the ALJ improperly discounted the opinions of her "main treating physician" Dr. Clifford Ameduri, while according decisive weight to the opinion of Dr. Vincent Yavorek, another of Plaintiff's treating physicians. (Docket #8, 7). Second, Wischoff claims that the ALJ erred in failing to properly evaluate and assess the credibility of her subjective complaints of pain in determining the she had the residual functional capacity to undertake less than the full range of light work.(Docket #8, 8).

**A. The ALJ's application of the treating physician rule.**

In making his finding that Wischoff was not disabled, the ALJ assigned "greater weight" to the opinions of Dr. Vincent Yavorek than to Plaintiff's other treating physicians "because of his long-standing treatment relationship with the claimant and the consistency of his conclusions with other medical evidence." (T. 17). Wischoff contends that this was error: she maintains that the ALJ ought to have accorded controlling weight to the "strong and consistent opinion of disability" offered by her "main treating physician" Clifford Ameduri in light of his "substantial contact" with her. (Docket 8, 7).

The Commissioner must give special consideration to the findings of a claimant's treating physician. A treating physician's

opinion is controlling if it is "well supported by medical findings and not inconsistent with other substantial record evidence." *See* Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); *see* 20 C.F.R. § 416.927(d)(2). The more consistent a treating physician's opinion is with other evidence in the record, the more weight it will be accorded. *See* 20 C.F.R.§ 416.927(d)(4). The nature of the treating relationship, the breadth of knowledge exhibited by the treating physician, and both the duration and the frequency of the treating relationship helps to establish the weight that the Commissioner must give to a particular medical opinion.  The opinion of a treating physician who is deeply familiar with the nature and extent of claimant's injury, and has seen the claimant frequently over a long period of time should be given controlling weight in the Commissioner's disability determination.  20  C.F.R. §404.1527(d)(2)(i-ii).

**1. Dr. Ameduri**.  Wischoff's claim has two parts. First, she maintains that Dr. Ameduri's opinion should be given controlling weight because his opinions are "consistent with medical evidence." Second, she suggests that the length of her treating relationship with Dr. Ameduri makes him "inherently more familiar with...claimant's medical condition than other sources." (Docket #8, 7). *Quoting*, Schister v. Brown, 851 F.2d 43(2d Cir. 1998); *See*, Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999).

Although Dr. Ameduri's opinion is consistent with the medical evidence in the record, That evidence, however, does not weigh in her favor. As she correctly points out, Dr. Ameduri did, in fact, pronounce her "100% temporarily totally disabled" on five separate occasions between May 12, 2006 and August 25, 2006. However, the final determination of disability is reserved for the Commissioner, 20 C.F.R. § 404.1527(e)(1), but that does not mean that the clinical findings of a treating physician can be ignored. While Dr. Ameduri's progress and treatment notes from May through August 2006 continued to find Wischoff "totally disabled", his final submission to the record, a report to the New York State Office of Disability Assistance submitted on January 2, 2007 declines to go this far. Ameduri noted that Wischoff could only infrequently lift and carry ten pounds over the course of an eight hour day, had abnormalities in her grip and fine motor skills, but that she had no functional limitations on standing or walking. (T. 319, 321, 322). Dr. Ameduri concluded that Wischoff had a "limitation on pushing and pulling" with her right arm, and that she could not use that arm for repetitive tasks. (T. 321).

Dr. Ameduri suggested that Wischoff's ability to work with her right arm was limited, but not entirely precluded. This conclusion is entirely consistent with the opinions of both Plaintiff's treating physicians and the consulting physicians who conducted independent medical examinations.

Two weeks after her examination by Dr. Ameduri, Wischoff was examined by Dr. Brij Sinha for the Social Security Administration. While he did not assess her ability to lift or carry, he did note that the grip in both of her hands was 5/5, that her hand and finger dexterity was "intact" and that the pain in her wrists and shoulder were 3/10. (T. 336 - 337). Like Dr. Ameduri, Dr. Sinha concluded that Wischoff had a "mild to moderate limitation for prolonged walking, bending and lifting" but that she had "no other limitations." (T. 339).

On March 1, 2007, Dr. Richard Miller, another of Wischoff's treating physicians concurred with Dr. Ameduri's opinion that Wischoff's right shoulder warranted classification under New York's Worker's Compensation laws – he suggested a moderate, partial permanent impairment consistent with a 20% scheduled loss. (T. 384 - 385). But he also opined that "I do think she can return to work with limitations of no pushing or pulling in excess of five pounds, working overhead, and/or constant repetitive work." (T. 384).

In August 2007 Dr. Vincent Yavorek, who Plaintiff asserted was her family physician (T. 38), submitted a medical source statement to the Social Security Administration in which he, too, professed Wischoff's ability to occasionally lift or carry up to ten pounds.(T. 679). He also noted that she had no limitations as to standing, sitting, or walking, and was capable of occasional reaching, handling, fingering, feeling, pushing and pulling with

both hands.(T. 680 - 681).  The only limitation that Dr. Yavorek proposed for Wischoff was "no repetitive hand/finger movement." (T. 684).

The final examination in the record was conducted by Dr. Charles Jordan for the New York State Worker's Compensation Board on September 25, 2007 for the purposes of affirming or denying Wischoff's classification.  Dr. Jordan deemed the classification of a 20% scheduled loss appropriate and suggested that the prognosis for future improvement suggested "permanency since the claimant feels that she is not improving" even a year after surgery to relieve pressure on a nerve in her elbow (radial tunnel syndrome). (T. 698).  Dr. Jordan's findings, in terms of both pain and range of motion, accorded with Dr. Sinha and Ameduri. (T. 697).  In sum, all of the treating and consulting physicians whose opinions are part of the record, including Dr. Ameduri, are in agreement that Wischoff was "limited" in her abilities but not barred from her working altogether.

    2. **Treating Physicians, Harmless Error**. Wischoff contends that the opinions of Dr. Ameduri, not Dr. Yavorek, should have been given greater weight in the ALJ's deliberations on the basis of his long association with and knowledge of her case. Dr. Ameduri certainly had more exposure to Wischoff than Dr. Yavorek since he saw her at least five times between May and August 2006. (T. 325, 327, 329, 331, 333, 335). There is no record beyond the August 2007 medical

source statement, that Wischoff ever saw Dr. Yavorek – although his office continued to renew her prescriptions through June 2007. In addition, Dr. Yavorek's office responded to a request for her medical records from the Social Security Administration with the assertion that Wischoff "has not been seen [since] 1/27/05 in our office." (T. 316).

In terms of numbers of visits and comprehensive familiarity with Wischoff's case, it is Dr. Richard Miller, and not Dr. Ameduri, whose opinions cover the longest span of time, greatest frequency, and depth of familiarity with her problems. Dr. Miller, who followed up with Wischoff after her carpal tunnel surgery in August 1984, saw Plaintiff twelve times between August 30, 2004 and March 1, 2007. During the first half of 2006, he saw her once a month, in the second half, he saw her on average every other month. Dr. Miller's notes not only are more numerous and more frequent than any of the other physicians involved in her case, they also show a thorough knowledge of Plaintiff's medical history, her concurrent treatment with Dr. Ameduri, and her various independent medical examinations pursuant to her social services claims. (*See, for example*, T. 384).

Although Plaintiff designated Dr. Yavorek as her family physician at her hearing before the ALJ, the record shows that he had not seen her since January 2005, and there is no indication in his medical source statement of August 2007 that his assessment was

based on a physical exam or other clinical findings. Although the ALJ's reliance on Dr. Yavorek's opinion may have been an error, it was a harmless one: the conclusions of Dr. Yavorek and Dr. Miller are nearly identical (and consistent with the conclusions of all of the physicians whose opinions and treatment notes appear on the record). Skibinski v. Astrue, 2010 WL 986524 *3 (W.D.N.Y. 2010); *See*, Caldwell v. Barnhart, 261 Fed. Appx. 188, 191(11th Cir. 2008) (failure to state the weight given to examining psychologist's opinion was harmless error where substantial weight was given to another doctor whose opinions were consistent with those of the examining psychologist and not otherwise contradictory).

**B. The ALJ Properly Determined the Credibility of Plaintiff's Subjective Complaints of Pain.**

Wischoff asserts that the ALJ did not accord sufficient weight to her subjective complaints of pain in making his decision to deny her claim. (Docket #8, 8). Specifically, she takes issue with his finding that even though her "medically determinable impairments could reasonably be expected to produce the alleged symptoms" her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (T. 17).

"Under appropriate circumstances, the subjective experience of pain can support a finding of disability.... A claimant who alleges as disability based on the subjective experience of pain need not adduce direct medical evidence confirming the extent of the pain,

but the applicable regulations do require 'medical signs and laboratory findings which show ... a medical impairment which could reasonably be expected to produce the pain.'" Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999); *citing*, 20 C.F.R. § 404.1529(a); *see also*, Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983) ("The pain need not be corroborated by medical findings, but some impairment must be medically ascertained.").

If medical signs or laboratory findings establish the existence of an impairment that could reasonably be expected to produce pain, the fact finder's next task is determining whether the intensity and persistence of the pain limit a claimant's capacity to work. 20 C.F.R. 404.1529(c). The ALJ has the discretion to perform this evaluation. Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). The ALJ may "discount plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and [claimant's] own activities during the relevant period." Ruggiero v. Astrue, 2008 WL 4518905 *11 (N.D.N.Y. 2008). In making this determination, the ALJ will consider seven factors in recognition that an individual's symptoms can sometimes suggest a greater level of impairment than can be shown by medical evidence alone. He will consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain and other symptoms, (3) whether there are "precipitating or aggravating factors", (4) the type, dosage and effect of any pain

medication the claimant may be taking, (5) any other treatment the claimant may be receiving for her pain, (6) any other measures claimant takes to relieve her pain (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.), and (7) "[o]ther factors concerning [her] functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3). Credibility is strongly indicated where claimant's statements and other testimony and evidence on the record are both internally and externally consistent. 20 C.F.R. § 404.1529(c)(4). The presence or absence of substantiating medical evidence, including a longitudinal record of treatment and its success or failure will also weigh heavily in a determination of credibility. 20 C.F.R. § 404.1527(d)(2)(i). Failure to expressly consider every factor set forth in the regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are "sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination." Delk v. Astrue, 2009 WL 656319 *4) (W.D.N.Y. 2009).

The record does, as Wischoff contends, provide ample evidence of her own subjective complaints of pain and her own assertions of physical limitations related to that pain and other symptoms. What the record does not contain is medical evidence supporting the degree of impairment that she claims. While noting her consistent complaints of pain, all of the physicians who examined Wischoff from

2006 onward noted both a good range of motion, and only mild to moderate limitations in her ability to use her right arm, elbow, and hands.

The ALJ's discussion of Plaintiff's medical records is both detailed and thorough starting with Dr. Miller's first examination of Wischoff in October 2004 and concluding with her examination by Dr. Charles Jordan in September 2007. On his first examination of Wischoff in October 2004, Dr. Miller noted that Wischoff's pain was "difficult to elicit" and localize. (T. 312). In June 2006, he again noted that her hand and wrist pain is "hard for her to localize." (T. 292). In December 2006, Dr. Miller noted that Wischoff continued to complain of pain in her shoulder and elbow but that she had an "excellent" range of motion with the elbow and only moderate pain in her shoulder on elevation. He opined that surgical intervention was not warranted but that site-specific injections and physical therapy were indicated. (T. 393 - 394). Dr. Miller's final statement on Wischoff was made on March 1, 2007. He cleared her for work "with limitations of no pushing or pulling in excess of five pounds, avoiding overhead and/or constant repetitive work", but also noted that her motor functions were intact and that she had only a "mild restriction" on motion with her shoulder. (T. 384).

Two months earlier, Dr. Brij Sinha evaluated Wischoff's capacities for the Social Security Administration and reached conclusions similar to Dr. Miller's. At that time, Plaintiff

reported that her pain in her shoulder and wrist were 3/10 and that her elbow was "not painful at present." (T. 336). Like Dr. Miller, following his physical examination Dr. Sinha cleared Wischoff to work with mild to moderate limitations related to lifting. (T. 339).

Further, the ALJ devoted a significant amount of time at Wischoff's administrative hearing to discussing Plaintiff's pain and its effects on her daily activities. At the hearing, Wischoff claimed that after making a cake she could do nothing for "a whole day or two". (T. 37). She asserted that she was constantly in pain, but could take nothing for it other than Tylenol which "really doesn't do a lot" because of her fear of addiction to Vicodin. (T. 39). Injections she had received into the shoulder and the elbow, helped "for a few days, maybe a week or so at the most" but failed to take the pain she experienced away. (T. 46). At the ALJ's urging, Wischoff testified about her daily activities stating that she could drive once or twice a week, lift and carry five pounds, and vacuum her house (as long as she switched off hands in doing so) (T. 35, 43). In short, the ALJ provided ample opportunity for Wischoff to testify to the limitations that her pain and her impairments placed on her.

The thorough nature of the ALJ's development of the record, and the apparent inconsistency between the clinical findings and Wischoff's subjective complaints of pain are sufficient to support

a conclusion that the ALJ did not abuse his discretion in determining that Wischoff's testimony was not entirely credible.

### **CONCLUSION**

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____

MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
April 16, 2010